DU BOSE *et al.*, BOARD OF SUPERVISORS v. CRANFORD.

[95 South. 676. No. 23357.]

COUNTIES. *Budget Law requires only general statement of revenues and expenses under each particular fund; particular officers payable out of budget need not be set out therein.*

Sections 1 and 2 of chapter 225, Laws of 1922, known as the "Budget Law," requires a general statement of the revenues and expenses of the county under each particular fund or purpose, and not specific items and details. It is sufficient if the budget as made and published show the estimates in gross for each particular purpose, without setting out the details of such expenses; and, where the budget shows a gross sum for salaries and fees of county officers, it is sufficient, and the particular officers payable out of such fund need not be set out.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Petition by Dr. W. S. Cranford against B. Du Bose, and others, constituting the Board of Supervisors of Jones County, for mandamus. From a judgment in favor of petitioner, defendants appeal. Affirmed.

*G. W. Hosey* and *Ellis B. Cooper,* for appellant.

The question at the threshold of this case relates to the contents of the budget. In other words, we have here a

case where the total of the estimate for salaries includes the salary of the county health officer now held by the appellee, but in the itemization thereof appellee's office is entirely omitted.   Will the budget in this case prevent the payment of appellee?   To state the question in another way, Does the budget have to show each item of salary or will it suffice if it shows the total sum estimated for the payment of the salaries which fall due during the ensuing year?   If the answer to the question is that it must not only show the amount to be paid in salaries but that it must also name the office which is to receive a portion of the total estimate, then this case must be affirmed.   The solution of the question will be found necessarily in the terms of the act itself.

Section 1 of the act in question provides that at the September meeting each year a budget shall be prepared showing the 'county expenses estimated for the next year.' It provides that a statement showing the aggregate revenue collected during the current year together with the sources of the revenue.   Section 2 provides that the budget shall be in such form as may be necessary to show all estimates of expenditure and sources of revenue.

The court will note that up to this point a great deal is left to the discretion of the different boards in the preparation of the budget.   There is nothing said except that the form shall be such as shall be necessary to show all estimates of expenditure for county purposes.   Section 3 of that act designates how books shall be kept by the clerks of the boards.   The obvious purpose of the methods designated is that the books will immediately show whether the expenditure has been within or without the estimate of the budget.

Section 4 is simply an admonition to the boards to lessen the expenditures and a requirement that they keep within the annual revenue.   Section 5 provides for emergencies.   The court will note that no provision is found for mistakes and errors in the preparation of the budget. Only certain emergencies are treated and these are those

caused by storm or disease. By well-settled rules of construction the emergencies herein dealt with may not be extended to any other emergencies. For here the term "like conditions unforseen," are used. , Certainly in the present case there are no conditions similar to the ones referred to and certainly it may not be said that this is unforseen.

Section 6 throws more light on what the framers of the law intended that the budget should show than any other portion thereof. This section clearly shows that it was the intention of the legislature that the budget should be itemized. The section provides that the taxpayers may petition against "any of items of proposed expenditure." It provides that when a petition is filed it shall be unlawful to impose any taxation "based on such items," other than taxes for payment of interest or installments on bonds, unless the question is submitted to the electorate and favorably voted on. The court will note that the term "item" is specifically mentioned and the law-making body goes further in showing that the term is carefully used and carefully chosen by excepting certain items from the vast mass of items that the budget will show.

From section 6 may be gathered the only light on this subject. It cannot be disputed that the board of supervisors could in its budget have a general head entitled "salaries." It could under this head place the total estimate for the salaries without mention of the offices to which the salaries are payable. In that event the board might easily and without penalty cover all of the officers of the county within the limits set by the estimate. It might allow for officers voted in after the publication of the budget, such as a county attorney, a county demonstration agent, a home economics agent, etc.

But is this the scheme in the legislative mind at the time of the preparation and enactment of the bill in question? We submit that it is not. Why should the legislature in section 6 specify "items" and then expressly except certain items from the operation of the law? The yery

exceptions themselves indicate that the legislature intended a detailed itemization of proposed expenditures. In other words, under the heading of "salaries" it is clear that the law-making power intended that the officers, to receive the salaries, should be specifically mentioned. Why should there be any provision for an election if the budget did not set out in detail the things to which the people might object? There would be no use. If the budget simply set out in separate heads "general purposes," "roads," "salaries," 'courts," etc., and then after each gave the estimated expenditure on that account, the provisions of section 6 would be absolutely useless.

This section clearly requires that the itemization must be made. Section 7 in providing the penalty for the violation of the act further emphasizes the fact that this chapter contemplates the itemization of the expenditures to be made. This condition is clearly found in the provisions that the members of the board voting for a claim not within the budget shall be liable on his bond for the full amount. And in providing this the law-making body provides liability for a claim allowed, a contract entered into, or public work provided for. Certainly, if the court will regard these words, it must hold that an itemization is contemplated. A claim not within the budget may not be paid.

It may be argued, however, that in the present case the question is brought up through error and that the total of the estimate includes the salary of the appellee. Yet we find in this chapter providing for the budget, no exception except those arising from storm or disease epidemic in form. Certainly the court will not write into the statute another exception covering instances of the sort now before the court.

It may be argued that the application of this act in the instant case will work the impairment of the obligations of a contract. But such is not the case. The contract now exists in its full integrity without the impairment of the obligation of the county thereunder. The only thing that has occurred is the postponement of the payment until the item is properly included within the budget.

*J. T. Taylor* and *J. M. Arnold,* for appellee.

To sum up this particular case: We think the judgment of the lower court should be affirmed because: 1. The contract with the appellee was made before the Law of 1922, chapter 225, was passed and at a time when there were no restrictions on this power and would affect this contract. 2. Because the board of supervisors intended to cover this office in the budget but through a clerical error the name of another office was written twice. 3. Because the appellee has rendered faithful service under his contract and under the same is entitled to be paid. 4. Because it was not in the power of the legislature, either itself or acting through some other board, to do any act where a valid contract would be changed in any particular. 5. Because the Act of 1922, chapter 225, is not constitutional. 6. Because, if the act be constitutional then, if the appellant be right that the budget must itemize the different things, the board of supervisors of Jones county, Mississippi, have no right at all and this board must cease to function because, if they cannot pay the appellee, then they cannot pay any other person and the public interest must suffer.

As said at the start of this brief, there has arisen great confusion in this state as to this act and what it means, and while we appreciate the fact that courts do not seek to decide things that do not have to be decided to settle a case, we do most respectfully ask this court to go as fully into this act as possible, construing it so all may understand what it means, if the court does hold that the act itself is constitutional, but ask this court to pass on the question as to whether it is a constitutional exercise of legislative power, and regulation of the different boards.

Above all, we ask that this court will affirm the judgment of the lower court because that judgment is just, fair and right.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Dr. Cranford, filed a petition for manda-
mus against the board of supervisors praying that the
board be compelled to allow his salary as county health
officer.   He alleged that he was duly appointed and quali-
fied as county health officer for the term beginning July
1, 1921, and ending July 1, 1923, and that at that August
meeting, 1921, his salary was fixed by the board at two
hundred dollars per month and was regularly paid from
then until the 1st of September, 1922; that he has presented
his account for October, November, and December, 1922,
which the board has failed and refused to allow; and
prays that mandamus issue directing them to allow the
said amount.   The board of supervisors filed a special plea
setting up that as directed by chapter 225, Laws of 1922,
they prepared the county budget, and in making up the cal-
culations of the budget included the salary of the county
health officer, but that in spreading the budget upon the
minutes the item of the county health officer was inad-
vertently omitted, and the item for sheriff and tax collec-
tor was inserted twice by inadvertence and the budget pub-
lished with these errors therein, and that they are advised
that they have no power to allow the salary of the county
health officer, because the same did not appear in the coun-
ty budget as entered upon the minutes and published in
the paper.   The case was tried on an agreed statement of
facts, agreeing in substance that the facts stated in the
declaration are true and also that the facts stated in the
special plea are true; that the amount of the budget pre-
pared is sufficient to pay this salary, but the county health
officer was not named in the budget as above stated.   The
court below entered an order directing the payment of
the salary, from which the board of supervisors appealed.

Sections 1 and 2 of chapter 225, Laws 1922, direct that
the board of supervisors of the several counties at their
September meeting prepare a budget of county expenses
estimated for the next year, and shall prepare a statement

showing the aggregate revenue collected during the current year in said county for county purposes. In such statement it shall show every source of revenue along with the amount derived from each source, and that such statement of revenue and expense shall be published in the county paper of September of each year, and that the said budget of expenses and revenue shall be in such form as may be necessary to show all estimates for the different county and municipal purposes of expenditure and the source of revenue respectively.

Section 3 of the act directs the clerk of the board of supervisors to keep a regular set of books, subject always to inspection within office hours, by any citizen, and such books shall contain accounts, under headings, corresponding with the several headings, of the budget, so that the expenditures under each head may be at once known; and that every claim against the county shall be numbered, and the number shall be shown in the warrant, and that each allowance shall have the number of claim noted in the minutes of said board.

Section 4 provides that the board shall at all times keep within the sums named in the said budget and within the annual revenue, always seeking to lessen expenditures instead of exceeding the revenue and budget reference.

Section 5 of the act provides for certain emergencies in which the board may expend moneys without making a budget.

Section 6 provides for the referendum against any item petitioned against by a majority of the taxpayers, and this section was held unconstitutional in *State ex rel. Attorney General* v. *Stone County*, 95 So. 683, decided March 26th.

Section 7 provides that the members of the board shall be liable on their bonds for the full amount of the claim allowed, the contract entered into, or the public work provided for, in case the board shall violate the budget law.

The case before us calls for a construction of the requirements of the act. Does the act require the board to

itemize the specific items of expenditure, or does it require a gross amount of estimated expenditures of any of the several funds involved in the county finances.   In other words, does the statement of expenditures required to be made require showing the details and items, or is it sufficient to group the expenditures in the total sum under each separate heading?   There are various sources of county revenue, such as general county fund, road fund, bridge fund, courthouse funds, road ad valorem, road commutation, school ad valorem, poll tax, etc.   In our opinion the legislature did not contemplate that all of the items of expenditure be published in the county paper.   Its purpose is to give the citizens and taxpayers notice of the amounts of the expenditures estimated by the board and the amount of the revenues estimated to be derived from taxation.   That these budgets are merely estimates, and in the case before us it was sufficient to estimate the amount to be expended for salaries of county officers without setting out each particular office and the amount which would be required to pay the salaries of such office.   It would be practically impossible to forsee many of the items which are to be paid out.   Contracts will have to be let in many cases, and the amount for which they will be let or for which certain expenditures must be made cannot be known with any precise degree of accuracy.   The law ought not be so strictly construed as to make it impracticable to operate under it.   The estimate of the budgets of expenditures cannot in all cases be accurate, and at most can only be approximations and should be large enough to take care of the county expenses so long as they do not exceed the estimated sources of revenue. The sources of revenue also are more or less uncertain because the assessment rolls may be changed after the budget is required to be published, and it would certainly be unreasonable to require such a strict construction as to impose upon the members of the board the drastic obligations and penalties provided in section 7 or suffer the county affairs to become in such a state of confusion as to

seriously cripple the general welfare of the county. The budget as published for salaries of county officers was large enough to warrant the payment of the county health officer's salary without violating the provisions of the law above issuing warrants where there was no money for their payment.

It follows from what we have said that the judgment of the court below will be affirmed.

*Affirmed.*